IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE ARREST OF<br>Vincent CLARK | Case No. 21mj566 (SALM)<br><br>June 4, 2021<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR CRIMINAL COMPLAINT**

1. I, Kyle Savo, am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I am currently assigned to the New Haven District Office Task Force.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for federal felony offenses. I am currently employed by the East Haven Police Department in the State of Connecticut, and have been since October 16, 2017. Prior to that, I was a police officer for the West Haven Police Department for approximately three years. I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since July 1, 2020. During my tenure as a police officer and Task Force Officer, I have participated in numerous criminal investigations, including investigations into suspected narcotics trafficking. I am currently assigned to the New Haven District Office, Organized Crime Drug Enforcement Task Force, ("Task Force") which is composed of personnel from the DEA, United State Marshal Service ("USMS"), New Haven Police Department ("NHPD"), West Haven Police Department ("WHPD"), Branford Police Department, ("BPD"), Meriden Police Department ("MPD"),

1

Ansonia Police Department ("APD"), Middletown Police Department ("MPD"), Naugatuck Police Department ("NPD"), and Waterbury Police Department ("WPD").

      3.      I have received instruction relative to conducting drug investigations while attending the Connecticut Police Academy (POSTC) in Meriden, Connecticut, as well as other training classes relative to narcotics trafficking. Over the past six (6) years in law enforcement, I have participated in the execution of numerous seizure warrants which have resulted in the seizure of narcotics, United States currency, assets acquired with drug proceeds and assets utilized to facilitate drug activities. I have participated in numerous investigations involving individuals suspected of distributing illegal drugs, participated in controlled purchases of illegal drugs utilizing cooperating witnesses, confidential sources and undercover agents/officers, and obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs. Moreover, I have conducted physical surveillance of individuals involved in illegal drug distribution, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local, state and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. In the course of my duties, I have assisted state prosecutors prepare affidavits in support of applications for search warrants and arrest warrants, and have executed numerous search and arrest warrants. I have supervised the activities of cooperating witnesses who have provided information and assistance in state prosecution of drug offenders. As a result of my training and experience, I am familiar with the manners in which controlled substances are commonly brought to Connecticut, manufactured, processed, packaged and distributed. I know the relative wholesale and retail value of various types of controlled substances. I am familiar with behaviors, methods and

common practices of persons and organizations that illegally transport and distribute controlled substances, as well as the devices commonly utilized by them

4.     Based on the above training and experience, I am well-versed regarding the means and methods used by persons involved in the use, possession, transportation, distribution and sale of controlled substances, the motivation of such persons involved in these crimes, and the methods utilized to facilitate narcotics distribution.

5.     Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that Vincent CLARK (YOB 1995) possessed with intent to distribute, and did distribute, heroin and fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

6.     Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts which I believe are necessary to establish the existence of probable cause to support the issuance of the warrant requested herein.

## Probable Cause

7.     The DEA New Haven District Office (NHDO) is investigating Vincent CLARK, a.k.a. "Pudge," for his role in the distribution of heroin and fentanyl in New Haven and surrounding areas. This investigation began on or about the month of October 2020, after members of the NHDO learned from fellow law enforcement officers that CLARK, who was on parole for a state drug trafficking offense, was selling heroin, fentanyl, and crack cocaine in the greater New Haven area. Thereafter, investigators conducted several controlled purchases of narcotics from CLARK using a DEA Confidential Source.

8. The DEA Confidential Source referred to herein (the "CS") has been a DEA CS since October 2020. Information he/she has provided has been corroborated through independent information provided to members of the NHDO. The CS has been deemed by law enforcement to be truthful, accurate and reliable, and information provided thus far has been corroborated. The CS does not have any criminal convictions, but has been arrested in the past with those charges resulting in a *nolle prosequi*. The CS is providing information in exchange for monetary compensation. During the month of October 2020, members of the NHDO spoke with the CS regarding his/her knowledge of Vincent CLARK's drug trafficking organization. The CS stated that he/she has been purchasing heroin from the CLARK and his associates for the past two years on a daily basis.

9. As noted above, CLARK is currently on parole for a 2019 Connecticut sale of narcotics conviction. As a condition of his parole, CLARK is currently being monitored by a GPS ankle bracelet. Members of the Connecticut Department of Correction have allowed investigators from the NHDO to have access to CLARK's GPS coordinates in conjunction with the controlled purchases described below.

*Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on March 19, 2021*

10. On March 19, 2021, members of the DEA NHDO formulated plans to conduct a controlled purchase of heroin from Vincent CLARK using the CS. In preparation for the controlled purchase, on this date, prior to the drug deal taking place, the CS met TFO Garbalosa and TFO Savo at the NHDO. At approximately 1:52 P.M., at the direction of controlling agents, the CS sent a text message to CLARK wherein, in sum and substance, he/she told CLARK that he/she wanted to purchase narcotics and that she had $300 to do so.

11. At approximately 12:30 P.M., members of the NHDO and New Haven Police Department (NHPD) established surveillance in the area of 61 Amity Road, New Haven, CT in anticipation of the meeting between CLARK and the CS. The CS was directed to Five Guys Burgers and Fries in Westville, next to CLARK's workplace, Goodwill Inc.

12. Prior to departing the pre-arranged location, TFO Savo and TFO Garbalosa provided the CS with $300.00 of DEA funds. The CS and his/her vehicle were checked for any other monies or contraband prior to departing the meet location, with negative results.

13. At approximately 12:55 P.M., TFO Garbalosa and TFO Savo followed the CS from the pre-arranged location to Goodwill Inc., located at 61 Amity Road, New Haven, CT. At approximately 1:00 P.M., CLARK contacted the CS via telephone. During the conversation, CLARK asked where the CS was. The CS advised CLARK, in sum and substance, that he/she was five minutes away and was on Whalley Avenue. Approximately two minutes later, CLARK again called the CS and asked where he/she was. The CS stated he/she was in traffic on Whalley Avenue and near 990 Whalley Avenue. CLARK then directed the CS to pull over to the brick building on his/her right. TFO Savo and TFO Garbalosa observed the CS pull over into an apartment complex adjacent to a brick building in the area of Whalley Avenue and Emerson Street. TFO Savo and TFO Garbalosa observed a grey Honda Accord bearing CT registration AY75342, pull directly alongside the CS vehicle. TFO Savo and TFO Garbalosa observed CLARK, who investigators have identified from booking photos, exit the passenger side of the Honda and get inside the front passenger side door of the CS's vehicle. A few minutes later, TFO Savo observed CLARK exit the CS's vehicle and enter the passenger seat of the grey Honda. A check of CLARK's coordinates at this time placed CLARK in the area of 1012 Whalley Avenue at 1:03 P.M., which was close in time to the controlled purchase.

14.     TFO Savo and TFO Garbalosa followed the CS back to the pre-determined location.  TFO Wright continued to follow the grey Honda as it traveled north on Whalley Avenue.  TFO Wright observed the Honda pull into the parking lot of 61 Amity Road and then CLARK exited the vehicle.  TFO Garbalosa and TFO Savo subsequently met with the CS at the pre-arranged meet location. At that time, the CS gave 50 individual wax folds containing a white powdery substance, each stamped "ZAZA," which he/she had just purchased from CLARK, to TFO Garbalosa, as witnessed by TFO Savo. TFO Mendenhall searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

15.     TFO Savo and Garbalosa did not test a representative sample due to the fact CLARK advised the CS it was fentanyl during the controlled purchase. The exhibit was secured at the NHDO evidence and secured in the overnight drug vault, pending submission to the New England Regional Laboratory (NERL) as witnessed by TFO Garbalosa.

*Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on March 30, 2021*

16.     On March 30, 2021, members of the DEA NHDO formulated plans to conduct a controlled purchase of heroin from Vincent CLARK.  At approximately 12:00 P.M., members of the NHDO, DEA Airwing (a surveillance airplane piloted by a DEA agent),  and New Haven Police Department (NHPD) established surveillance in the area 61 Amity Road, New Haven, CT in anticipation of the meet between CLARK and the CS.  At approximately 12:15 P.M., at the direction of controlling agents, the CS sent a series of text messages to CLARK, which was visually observed by TFO Savo.  The CS was again directed to Five Guys in Westville, next to CLARK's workplace which has been identified as Goodwill Inc. located at 61 Amity Road, New Haven, CT.  Moments later CLARK called the CS and asked the CS to Facetime him.  The CS relocated to his/her vehicle and Facetimed CLARK.  CLARK advised the CS he just wanted to

speak face to face with the CS to make sure he knew who he was dealing with, or words to that effect. CLARK advised the CS that he would be giving him/her "loose" product and to have the CS call him when he/she was close. These conversations were not recorded by case agents.

17. Prior to departing the pre-arranged location, TFO Savo and TFO Garbalosa provided the CS with $1,400.00 of DEA funds to conduct the purchase. The CS and his/her vehicle were checked for any other monies or contraband prior to departing the meet location, with negative results.

18. At approximately 12:39 P.M., SA Mazzacane and TFO Garbalosa and TFO Savo followed the CS from the pre-arranged location to the Five Guys restaurant, located in the area of 61 Amity Road, New Haven, CT. At approximately 1:04 P.M., CLARK contacted the CS via telephone. During the conversation, CLARK advised the CS that he was ten minutes away. The CS advised CLARK, in sum and substance, that he/she was pulling into the Five Guys lot. At approximately 1:07 P.M., a check of CLARK's coordinates at this time placed CLARK at 61 Amity Road, New Haven, CT.

19. At approximately 1:29 P.M., TFO Savo observed CLARK walk toward the CS's vehicle. CLARK proceeded to open the front passenger door of the CS vehicle and enter it. Moments later, the CS vehicle traveled along the back side of the Goodwill towards Whalley Avenue, which was captured on video by DEA Airwing. At approximately 1:31 P.M., NHPD Detective E. White observed the CS's vehicle passing the Mobile Gas Station and that the CS vehicle was currently stopped at the red traffic light in the right lane on Whalley Avenue. The CS's vehicle was observed by traveling eastbound on Whalley Avenue.

20. The CS's vehicle was continuously followed by surveillance units to the Walgreens located at 436 Whalley Avenue, where the CS vehicle was observed by DEA Airwing

backing into a parking space, next to a red convertible at approximately 1:40 P.M. Moments later, CLARK was observed by DEA Airwing exiting the CS vehicle and walking towards the driver's side of the red convertible, where CLARK subsequently met with a heavy set black male, later identified as Rashawn SAMMS. At approximately 1:41 P.M., CLARK re-entered the CS's vehicle. Moments later, CLARK was observed by DEA Airwing exiting the CS's vehicle and entering the passenger side of the red convertible. At approximately 1:43 P.M., SA Cogan observed the CS's vehicle pulling out of the Walgreens lot and onto Whalley Avenue. TFO Garbalosa and TFO Savo subsequently met with the CS at the pre-arranged meet location. At that time, the CS relinquished custody of Exhibit 3, a knotted plastic bag containing a white powdery substance of suspected fentanyl to TFO Savo as witnessed by TFO Garbalosa. TFO Garbalosa searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

21.     Following the acquisition, the CS relinquished custody of the heroin/fentanyl to TFO Garbalosa and TFO Savo. SA Jonah Mazzacane conducted a field test of the white powder utilizing a Tru-Narc Laser, which resulted in a positive test for fentanyl. The exhibit was secured at the NHDO evidence and secured in the overnight drug vault, pending submission to the NERL as witnessed by TFO Garbalosa. The New England Regional lab report identified white powdery substance as fentanyl with a reserve weight of 12.3 grams.

***Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on April 12, 2021***

22.     On April 12, 2021, members of the DEA NHDO formulated plans to conduct a controlled purchase of heroin from Vincent CLARK. At approximately 1:38 P.M., members of the NHDO and DEA Airwing established surveillance at CLARK's residence in the area of 44

George Street, East Haven, CT in anticipation of the meet between CLARK and the CS. The CS was directed to the Mobil Gas Station located at 200 Sargent Drive, New Haven.

23. Prior to departing the pre-arranged location, SA Mazzacane and TFO Savo provided the CS with $1,000.00 of DEA funds. The CS and his/her vehicle were checked for any other monies or contraband prior to departing the meet location, with negative results. At approximately 1:00 P.M., SA Mazzacane and TFO Savo followed the CS from the pre-arranged location to the Mobile Gas Station, located in the area of 200 Sargent Drive, New Haven, CT.  At approximately 1:38 P.M., at the direction of controlling agents, the CS called CLARK via Facetime, a video call application available to Apple users.  During the call, SA Mazzacane and TFO Savo were listening to the recorded call while the CS placed the order for 40 bags of heroin. CLARK then said that he was on his way to meet the CS.   A check of CLARK's coordinates of April 12, 2021, placed CLARK at 44 George Street at approximately the above-mentioned time.

24. At approximately 1:47 P.M., TFO Garbalosa observed CLARK exit the residence of 44 George Street.  TFO Garbalosa observed the black male to be on his cell phone and proceeded to walk towards a black Nissan SUV.  TFO Garbalosa observed CLARK to get into the front passenger side of the black Nissan SUV.  Surveillance units, along with DEA Airwing, maintained constant mobile surveillance of the black Nissan.  Surveillance units observed CLARK pull into a Gulf gas station located at 262 Forbes Avenue, which was verified through CLARK's GPS ankle monitor.  Case agents observed CLARK enter the store for a brief period of time before getting back into the passenger side of the black Nissan.  Surveillance units observed CLARK pull alongside a white two-door Honda on Peat Meadow Road in New Haven.  CLARK met with the white Honda briefly before departing the area.  Surveillance units maintained a constant eye on CLARK's vehicle and observed the vehicle get on Interstate 95 South.  CLARK

was followed off the exit where he met with the CS.  At approximately 2:15 P.M., SA Mazzacane and TFO Savo observed CLARK arrive in the black Nissan and pull alongside the CS's vehicle.  TFO Savo observed CLARK exit the Nissan and enter the front passenger seat of the CS's vehicle.  Moments later, CLARK exited the CS's vehicle and entered the front passenger side of the black Nissan.  CLARK was then observed departing the area.

25. SA Mazzacane and TFO Savo subsequently met with the CS at the pre-arranged meet location. At that time, the CS relinquished custody of one clear knotted plastic bag containing (40) individual bags along with an additional clear knotted sandwich bag containing a white powdery substance to TFO Savo, as witnessed by SA Mazzacane. TFO Savo searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

26. Following the acquisition, the CS relinquished custody of the heroin/fentanyl to TFO Garbalosa and TFO Savo. SA Jonah Mazzacane conducted a field test of the white powder utilizing a Tru-Narc Laser, which resulted in a positive test for fentanyl.  The suspected fentanyl was secured at the NHDO in the overnight drug vault, and later submitted to the NERL.

*Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on April 21, 2021*

27. On April 21, 2021, members of the DEA NHDO formulated plans to conduct a controlled purchase of heroin from Vincent CLARK.  At approximately 1:24 P.M., at the direction of controlling agents, the CS placed a recorded phone call to CLARK.  The CS advised case agents that CLARK did not answer the phone.  The CS stated CLARK then called him/her back at 1:25 P.M. The CS asked if he/she could meet up with CLARK in about an hour and that he/she had $700 dollars, or words to that effect.  CLARK advised the CS to call when he/she was in the area of New Haven and the two would meet.

28. Prior to departing the pre-arranged location, SA Jonah Mazzacane and TFO Savo

provided the CS with $700.00 of DEA funds. The CS and his/her vehicle were checked for any other monies or contraband prior to departing the meet location, with negative results.

29. A approximately 2:30 P.M., investigators established surveillance in the area of 759 Quinnipiac Avenue in New Haven, based on CLARK's GPS bracelet in anticipation of the meeting between CLARK and the CS.

30. SA Mazzacane and TFO Kyle Savo followed the CS from the pre-arranged location to Ikea, located at 450 Sargent Drive, New Haven. The CS was directed to place the call to CLARK once case agents established surveillance in the area of Quinnipiac Avenue. CLARK directed the CS to go to Exit 8 off Interstate 91 and to call him when he/she was getting off the exit.

31. At approximately 2:48 P.M., The CS called CLARK and advised he/she was about to get off the exit. CLARK directed the CS to take a right at Quinnipiac Avenue and go to Ziggy's Pizza. Moments later, NHPD Detective E. White observed CLARK emerge from the residence of 759 Quinnipiac Avenue. At approximately 2:50 P.M., investigators observed CLARK walk to meet the CS on Quinnipiac Avenue and enter CS's vehicle. The CS continued south on Quinnipiac Avenue and proceeded left on East Grand Avenue. The CS and CLARK then briefly stopped on Lennox Street, where the CS later reported the two completed the narcotics transaction. The CS then brought CLARK to the area of 759 Quinnipiac Avenue, where CLARK exited the vehicle. SA Mazzacane and TFO Savo subsequently met with the CS at the pre-arranged meet location. At that time, the CS relinquished custody of 30 individual clear glassine baggies containing a white powdery substance of fentanyl/heroin to TFO Savo, as witnessed by SA Mazzacane. TFO Savo searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

32. Following the acquisition, the CS relinquished custody of the heroin/fentanyl to TFO Savo as witnessed by SA Mazzacane. SA Mazzacane conducted a field test of the white powder utilizing a Modified Scott Reagent Presumptive Drug Test, which tested positive for heroin. SA Mazzacane processed it as DEA evidence and secured it in the NHDO temporary overnight drug vault, pending submission to the NERL for analysis.

*Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on May 13, 2021*

33. On May 13, 2021, members of the DEA NHDO formulated plans to conduct a controlled purchase of heroin from Vincent CLARK. On this date, prior to the drug deal taking place, the CS met SA Mazzacane and TFO Savo at the NHDO. At approximately 1:00 P.M., at the direction of controlling agents, the CS sent a text message to CLARK. The CS stated CLARK then texted him/her back to Facetime him. The CS advised CLARK he/she would Facetime him when he/she was in a comfortable location. At approximately 1:26 P.M. The CS Facetimed CLARK and asked where to meet him. CLARK advised the CS to meet him off Exit 8 in New Haven at the Walmart on Route 80, in New Haven, CT. CS advised CLARK he/she would call him in a little while, or words to that effect.

34. A approximately 1:40 P.M., members of the NHDO established surveillance in the area of 13A Solomon Crossing in New Haven, based on CLARK's GPS coordinates, in anticipation of the meeting between CLARK and the CS. Prior to the drug deal taking place, TFO Wright conducted surveillance of CLARK in New Haven. Based on CLARK's GPS information, TFO Wright observed CLARK to be operating a white Acura bearing Connecticut registration BC20427. While establishing surveillance in the area of 13a Solomon Crossing, TFO Lennon observed the same white Acura that CLARK was operating earlier in the day in front of the residence of 13A Solomon Crossing.

35. At approximately 1:57 P.M., TFO Lennon observed CLARK exit the residence of 13A Solomon Crossing and enter the driver's seat of the Acura and depart the area. At approximately 1:59 P.M., CLARK called the CS and advised him/her he was packaging the product and going to throw him/her an extra bag for the long wait, or words to that effect. At approximately 2:12 P.M., CLARK called the CS and advised he just left his residence and that he was in the area and will be meeting the CS shortly. CLARK's GPS coordinates placed him in the area of Bella Vista apartment complex on Eastern Street, in New Haven.

36. At approximately 2:24 P.M., CLARK Facetimed the CS and asked where he/she was. CLARK advised the CS he was in the Walmart parking lot. The CS directed CLARK to the first row of the parking lot closest to the McDonalds. CLARK then arrived in the white Acura and parked alongside the CS. The CS then got inside CLARK's front passenger seat. The CS stated CLARK handed him/her two clear knotted sandwich bags of loose powder and explained he gave him/her an extra bag for the wait. The CS then began conversation with CLARK and asked if CLARK can get him/her 50 grams to minimize meeting every week. CLARK advised the CS that he could get the CS 50 grams and to call him a day beforehand so that he could get the product. The CS then exited CLARK's vehicle and got into his/her own vehicle.

37. TFOs Savo and Fasulo and SA Mazzacane subsequently met with the CS at the pre-arranged meet location. At that time, the CS relinquished custody of two individual clear knotted sandwich baggies containing a white powdery substance that weighed approximately 11 grams to TFO Savo, as witnessed by SA Mazzacane. TFO Savo searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

38. Following the acquisition, the CS relinquished custody of the heroin to TFO Savo

and TFO Fasulo. TFO Savo and Fasulo did not test a representative sample of the heroin/fentanyl. The heroin/fentanyl was secured at the NHDO evidence and secured in the overnight drug vault, pending submission to the NERL as witnessed by SA Mazzacane and TFO Wasilewski. Due to not having the required testing and protective equipment, a representative sample was not taken and instead the substance was sent directly to the NERL for analysis.

### *Controlled Purchase of Heroin/Fentanyl from Vincent CLARK on May 25, 2021*

39. On May 25, 2021, plans were formulated to purchase $3,500.00 of heroin from CLARK utilizing the DEA CS. On this date, prior to the drug deal taking place, the CS met SA Mazzacane and TFO Savo at the NHDO. At approximately 1:52 P.M., at the direction of controlling agents, the CS sent a text message to CLARK. The CS asked CLARK if he was around, and CLARK responded affirmatively. The CS told CLARK that he/she was "good" and had the $3,500 dollars. The CS advised case agents that CLARK directed him/her to meet with him at Long Wharf. The CS stated CLARK then texted him/her back to Facetime him. At approximately 1:58 P.M. The CS Facetimed CLARK and the CS stated he/she could meet CLARK in twenty minutes and that he/she was in North Haven. CLARK advised the CS to call him once he/she gets off the exit.

40. Prior to the CS placing a call to CLARK, case agents established surveillance in the area of 425 Eastern Street, New Haven. CLARK's GPS coordinates placed him in the apartment complex, which was confirmed by surveillance units and DEA Airwing.

41. At approximately 2:08P.M., surveillance units observed CLARK meet with another vehicle in the apartment complex before entering the white Acura bearing misused Connecticut marker plate BC20427. The CS placed a call to CLARK on or about the same time and advised that he/she was getting off the exit. The CS was directed by CLARK to park by the

food trucks on Long Wharf Drive.  The CS positioned himself/herself at the southern end of the food trucks.

42.     Surveillance units, along with DEA Airwing, maintained constant surveillance of CLARK from 425 Eastern Street to an apartment complex located at 1825 Ella T. Grasso Boulevard in New Haven.  At approximately 2:32 P.M., surveillance units observed CLARK meeting with a heavy set black male in a silver Volkswagen bearing Virginia marker plates UEX6253.  CLARK and the unknown male entered the front of the apartment complex.  At approximately 2:38 P.M., SA Cogan observed both CLARK and the unknown male exit the complex and enter their vehicles.  Surveillance units followed CLARK from the 1825 Ella T. Grasso Boulevard to Long Wharf Drive.

43.     At approximately 2:45 P.M., CLARK Facetimed the CS asking if the CS wanted to change the meet location and go to his house.  The CS told CLARK he/she wanted CLARK to just meet him/her at Long Wharf at the food trucks and get the deal over with.  CLARK advised the CS he was on his way.

44.     At approximately 2:46 P.M., TFO Savo and TFO Fasulo observed CLARK traveling southbound on Long Wharf Drive passing the food trucks towards the CS vehicle.  Moments later, SA Mazzacane observed CLARK make a U-turn and park directly behind the CS.  CLARK exited his and approached the passenger side of the vehicle.  CLARK advised the CS he could not get the full 50 grams and provided him/her with 45 grams instead.  In exchange, the CS gave CLARK $3,160.00 dollars of DEA funds.  CLARK was observed exiting the CS vehicle and entered the white Acura.  CLARK was observed departing the area.  TFO Savo, TFO Fasulo, and SA Mazzacane subsequently met with the CS at the pre-arranged meet location.  At that time, the CS relinquished custody of one clear knotted sandwich baggie containing a white

15

powdery substance to TFO Savo, as witnessed by SA Mazzacane. TFO Savo searched the CS as well as his/her vehicle for monies and/or contraband with negative results.

45. Following the acquisition, the CS relinquished custody of the narcotics to TFO Savo and TFO Fasulo. A representative sample was tested, which tested positive for fentanyl. The suspected fentanyl, with packaging, weighed approximately 44 grams. The fentanyl was secured at the NHDO evidence and secured in the overnight drug vault, pending submission to the NERL, as witnessed by SA Mazzacane.

## CONCLUSION

46. Therefore, I respectfully submit that there is probable cause to believe, and I do believe, that CLARK committed violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), possession with the intent to distribute, and distribution of, heroin and fentanyl.

47. In consideration of the foregoing, I respectfully request that this Court issue a criminal complaint and arrest warrant charging CLARK with violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

Respectfully submitted,

KYLE SAVO (Affiliate)
Digitally signed by KYLE SAVO (Affiliate)
Date: 2021.06.04 16:44:21 -04'00'

Kyle Savo,
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me telephonically on this 4th day of June, 2021, at New Haven, Connecticut

Sarah A. L. Merriam, U.S.M.J.
Digitally signed by Sarah A. L. Merriam, U.S.M.J.
Date: 2021.06.04 17:02:54 -04'00'

HON. SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE